# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LENARD MORRIS,<br><br>    Defendant. | No. CR05-4085-MWB<br><br>**REPORT AND RECOMMENDATION** |

_____

This matter is before the court on the defendant's motion (Doc. No. 35) to suppress evidence. The plaintiff (the "Government") has resisted the motion. (Doc. No. 41)

Also before the court is a document filed *pro se* by the defendant entitled "Motion for Civil Rights Complaint." (Doc. No. 40) In his *pro se* motion, the defendant raises additional contentions relating to the constitutionality of his arrest and the search of his vehicle. Specifically, he claims his arrest was motivated by racial profiling. Presumably seeking relief under 42 U.S.C. § 1983, the defendant seeks monetary damages for the alleged violations of his constitutional rights. The court will address the suppression issue raised by the defendant's *pro se* motion in this opinion. However, even if the district court ultimately finds the defendant's rights were violated in connection with his arrest and the search of his vehicle, such a finding would not automatically entitle the defendant to damages. The defendant would have to file a separate lawsuit under 42 U.S.C. § 1983 for the purpose of seeking any damages. Therefore, to the extent the defendant's *pro se* motion attempts to initiate a civil action for damages, the court finds it has not been filed properly, and in any event it is premature, and the undersigned recommends it be dismissed, without prejudice to the filing of a separate lawsuit, if appropriate, at a later date and following the proper procedures.

Turning to the suppression issues, pursuant to the trial management order (Doc. No. 14), motions to suppress in this case were referred to the undersigned United States

Magistrate Judge for review, and the issuance of a report and recommended disposition. Accordingly, the court held a hearing on the motions on November 16, 2005, at which Assistant U.S. Attorney John Lammers appeared on behalf of the plaintiff (the "Government"), and the defendant Lenard Morris appeared in person with his attorney, Joseph Flannery. The Government offered the testimony of Tri-State Drug Task Force Officer Shawn Jensen and Sioux City police officer (and former Task Force Officer) Todd Sassman.

The motions now have been fully submitted, and the court turns to consideration of the defendant's motions to suppress.

## *BACKGROUND FACTS*

In the early morning hours of June 23, 2005, officers responded to a call regarding a disturbance in the parking lot of a Motel 6 in Sergeant Bluff, Iowa. The report indicated two or three men were fighting. When officers arrived, they made contact with Zakee Shareef, a codefendant in this case. Shareef was found to be in possession of approximately fourteen grams of crack cocaine, and he was arrested. Shareef almost immediately volunteered information to officers indicating he had thrown a plastic storage container of additional crack cocaine into the back of a white Ford F-150 pickup truck parked in the motel's parking lot. While Shareef was being transported to the Sergeant Bluff police station, officers conducted a K-9 search of the white truck Shareef had identified, and the dog immediately alerted on the vehicle. The pickup truck had an open cab with a fully-exposed bed. Inside the bed, in plain view, was a plastic storage container. After the dog alerted on the vehicle, officers looked in the container and found close to a pound of crack cocaine. They ran the vehicle's Texas license plates and learned the vehicle was registered to the defendant Lenard Morris.

While an officer was conducting the K-9 search, the officer noticed a white passenger car driving through the motel parking lot. He could see a black male passenger

in the vehicle. The officer wrote down the license plate number, ran the plates, and learned the vehicle was registered to a Laleetras Rainey with an address in the Morningside neighborhood of Sioux City, Iowa.

TFO Jensen conducted a post-*Miranda* interview of Shareef at the Sergeant Bluff police station. Shareef told Officer Jensen that he and Morris were from Texas, and they had been making frequent trips from Texas to the Sioux City, Iowa, area to deliver large quantities of crack cocaine. Shareef indicated he was paid with about $300 worth of crack cocaine per trip to ride along with Shareef during these trips. He stated he was upset with Morris because Morris was not paying him as agreed. Shareef had discovered the plastic storage container full of crack cocaine in the motel room he was sharing with Morris, and Shareef decided to take the container as his payment. He took the container and left the room. Shortly thereafter, Morris discovered Shareef had taken the container, and Morris ran outside after Shareef. There was some type of disturbance as the two men fought over the container; the nature of the disturbance is not evident from the record (*e.g.*, whether it was verbal, physical, or both), but it was enough to cause someone to call the police. Shareef apparently got away from Morris, who then went back into the motel room. After Morris went back inside, Shareef decided he would take only a portion of the crack cocaine in the container, and he removed approximately fourteen grams and threw the container with the rest of the crack cocaine into the bed of Morris's pickup truck. When the police arrived, Shareef was arrested as described above.

Shareef told officers Morris had a girlfriend named "Lalee" who lived in Morningside. He also told officers the crack cocaine in the plastic storage container was only a portion of the drugs he and Morris had brought with them from Texas, and he believed Morris still had a large quantity of drugs with him.

Based on the fact that an officer had seen Laleetras Rainey's white automobile in the motel parking lot, with a black male passenger inside, the officers believed the male passenger likely was Morris. They located the white vehicle at Rainey's home in

3

Morningside, and initiated surveillance of the vehicle. They also initiated surveillance of the motel room Shareef said he and Morris were occupying. Officers observed a man and woman, believed to be Morris and Rainey, come out of Rainey's home and get into the white vehicle, with Morris driving.[1] They drove to a cell phone store on Jackson Street in Sioux City, where Rainey got out of the vehicle and went inside. Morris continued driving toward Interstate 29. Officer Sassman joined in the surveillance of the vehicle just before it got onto I-29.

Officer Sassman and other officers followed the vehicle south on I-29. The vehicle exited the highway at the airport/Sergeant Bluff exit, but instead of turning right, toward the Motel 6, the vehicle turned left, drove over the Interstate, and entered the parking lot of an EconoLodge. Officers saw Morris get out of the vehicle, go into a second-floor motel room, and, after less than five minutes, come back outside carrying a blue duffel bag and a white plastic grocery-type bag. He put the two bags into the trunk of the car, left the parking lot, and got back onto I-29, heading north. Officers Sassman and Jensen both testified that in their experience, drug dealers often will have more than one motel room, either in the same or different motels, or even a nearby apartment, so they can stay in one place and stash drugs in one or more other locations. As a result, they found Morris's activities to be suspicious.

Uniformed officers stopped Morris on I-29 northbound, just south of the Floyd Boulevard exit. After confirming his identity, officers arrested Morris. Morris was searched incident to his arrest, and was found to have about $800 on his person. Morris was taken to the Sioux City police station, while his vehicle was driven to the station by an officer. Officer Sassman searched Morris's vehicle. In the blue bag Morris had placed in the trunk, Officer Sassman found almost a pound of crack cocaine, a .380 caliber handgun, a digital scale, and over $2,000 in cash. Morris was advised of his *Miranda*

---

[1] Because the driver later was confirmed to be Morris, the court will refer to him as Morris throughout the remainder of this opinion.

4

rights, and he stated he was willing to speak with the officers, but he wanted to consult with an attorney first. After speaking with an attorney, Morris, accompanied by his attorney, gave a statement to officers in which he admitted his involvement in drug trafficking. He then engaged in some active cooperation with law enforcement.

In the motion to suppress, Morris argues officers lacked probable cause to justify stopping and arresting him, or to justify a search of the vehicle he was driving. In his *pro se* motion, Morris argues the stop of the vehicle and his subsequent arrest were motivated by racial bias. These are the issues the court must consider in ruling upon Morris's motions.

## *DISCUSSION*

Preliminarily, with regard to Morris's *pro se* motion, the court finds there is no evidence of any kind in the record to support a claim that racial profiling played a part in the stop of the vehicle Morris was driving or in his arrest. Morris offered no evidence at the hearing to support this claim, and the court finds the claim is frivolous and recommends the *pro se* motion be denied.

Turning to the probable cause issue, the Eighth Circuit Court of Appeals has explained that "[i]n determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had committed or was committing a crime." *United States v. Segars*, 31 F.3d 655, 659 (8th Cir. 1994). "Reasonable suspicion" means "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Garcia-Camacho*, 53 F.3d 244, 246 (9th Cir. 1995). Officers may consider all the evidence available to them, regardless of whether or not each component would support a finding of probable cause by itself. *See United States v. Ramos*, 42 F.3d 1160, 1163 (8th

5

Cir. 1994) ("A trained officer may properly infer from a collection of circumstances, no one of which itself indicates illegal activity, that further inquiry is appropriate.")

Here, the court must determine from the totality of the circumstances whether a prudent officer would have believed Morris was engaging in criminal activity at the time he was stopped on the highway.

> [This] objective, reasonable-man test is appropriate because, unlike a subjective test, it "is not solely dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the burden of anticipating the frailties or idiosyncracies of every person whom they question."

*Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317 (1984) (quoting *People v. P.*, 233 N.E.2d 255, 260 (1967)).

In the present case, Shareef was arrested and questioned, and he cooperated with officers and indicated he and Morris were involved in bringing large quantities of crack cocaine to Iowa from Texas. He indicated an altercation had taken place between the two in the Motel 6 parking lot that led to the arrival of police officers on the scene. He admitted he had thrown a significant quantity of crack cocaine into the bed of Morris's pickup truck. From a drug dog alert, and from their plain view of the container, officers corroborated Shareef's statement that drugs were in the back of the pickup truck. As Shareef had stated, the vehicle was registered to Morris. In addition, Shareef was making statements against his own penal interest. These facts created ample probable cause for the officers to seize the drugs in the back of the pickup truck, despite the fact that it was registered to Morris.

Further, Shareef had stated Morris had a girlfriend named Lalee, or something similar, who lived in Morningside. Officers saw a vehicle they learned was registered to Laleetras Rainey – a name similar to Lalee – leaving the Motel 6 parking lot shortly after Shareef's arrest, with a black male occupying the passenger seat of her car. It was both reasonable and logical for the officers to conclude Rainey had been picking up her

6

boyfriend at the motel, and that her black male passenger had been Morris. Officers initiated surveillance at Rainey's house, where they located the vehicle that had been seen leaving the Motel 6 parking lot. When Rainey and Morris left the house in the vehicle, officers followed, saw Rainey being dropped off, and then followed Morris as he drove to a motel nearby the Motel 6. They watched Morris enter a motel room, and emerge just minutes later carrying a duffel bag and a plastic grocery-type bag, which he placed in the vehicle's trunk. Based on their training and experience, Morris's actions were highly suspicious, and it was reasonable for officers to believe the remainder of the drugs as described by Shareef were in Morris's possession, likely in one of the two bags he had placed in the trunk.

Viewing the totality of the circumstances, the court finds the evidence establishes that the officers had probable cause to stop and arrest Morris, and to search the trunk of the vehicle.[2] *See United States v. Reidesel*, 987 F.2d 1383 (8th Cir. 1993) (warrantless search of trunk falls under "automobile exception" to warrant requirement if officers have probable cause to believe trunk contains contraband). As a result, the court recommends Morris's motion to suppress be denied.

## IV. CONCLUSION

For the above reasons, **IT IS RESPECTFULLY RECOMMENDED** that the defendants' motions to suppress be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections by **November 28, 2005**. Any response to the objections must be served and filed by **December 2, 2005.**

---

[2] Notably, although not recited in the factual background, Officer Sassman testified officers would have conducted a full inventory search of the impounded vehicle in any event before returning the vehicle to its owner, for the protection of both the officers and the owner. In this case, the vehicle was returned to Rainey, with Morris's assistance, not long after it was impounded.

**Any party planning to lodge objections to this report and recommendation must order a transcript of the hearing promptly.**

**IT IS SO ORDERED.**

**DATED** this 17th day of November, 2005

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT